UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-216-GWU

MICHAEL LYNN WILSON, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

    Step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

  Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

08-216 Michael Lynn Wilson

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Michael Lynn Wilson, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of osteoarthritic changes of the cervical spine, osteoarthritic changes of the right knee, a history of right shoulder dislocation, depression, anxiety, and a personality disorder.  (Tr. 20). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Wilson retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 23-6).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 41-year-old man with a tenth grade education and work experience as a die cast machine operator, cabinet assembler, and small parts assembler, could perform any jobs if he were limited to "light" level exertion with a need to alternate sitting and

08-216  Michael Lynn Wilson

standing at 45 minute intervals, and could perform no more than occasional overhead reaching. In addition, he would have a "limited but satisfactory" ability to deal with stress and understand, remember, and carry out simple one- and two-step instructions, was "severely limited but not precluded" from interacting with supervisors and coworkers, and had no useful ability to deal with the public. (Tr. 578). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Id.).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Regarding the physical restrictions, no treating or examining source imposed greater functional restrictions than found by the ALJ. The ALJ's conclusions are consistent with the opinions of state agency non-examining physicians Dr. Timothy Gregg and Dr. David Swan, who reviewed the record in February and June, 2006, respectively, and concluded that Mr. Wilson could perform light level exertion with occasional climbing of ladders, ropes, and scaffolds, and with a limited ability to reach in all directions. (Tr. 472-8, 481-7). The plaintiff points out on appeal that after these opinions were given, he underwent knee surgery and additional cervical spine evaluations, which led to his neurosurgeon recommending an operation to fuse the spine. (E.g., Tr. 512-15). The plaintiff suggests that an opinion should

08-216  Michael Lynn Wilson

have been obtained from a medical adviser or a consultative examiner.  However, it is the claimant's responsibility to prove his own case, and the mere diagnosis of conditions does not establish functional limitations.  <u>Higgs v. Bowen</u>, 880 F.2d 860, 863 (6th Cir. 1988).  Accordingly, this portion of the decision is supported by substantial evidence.

Regarding the plaintiff's mental status, records from the Labette Center for Mental Health in Parsons, Kansas, show that Mr. Wilson was diagnosed in 2004 with a variety of conditions, including recurrent major depressive disorder, a panic disorder without agoraphobia, "rule out" intermittent explosive disorder and personality disorder, and a history of alcohol dependence and cannabis abuse in full sustained remission. (E.g., Tr. 378-87). Medications were prescribed. A discharge summary by a social worker dated February 25, 2005 indicates that Mr. Wilson was seen between April 2 and November 2, 2004, with a final diagnosis of panic disorder without agoraphobia and a paranoid personality disorder. (Tr. 522). His current Global Assessment of Functioning (GAF) score was 51 with a highest score of 60.  GAF scores in this range reflect "moderate" symptoms.  <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision) (DSM-IV-TR), p. 34.

After moving to Kentucky, Mr. Wilson was consultatively evaluated by Psychologist Greg V. Lynch on January 13, 2006.  (Tr. 420).  He reported a history

08-216  Michael Lynn Wilson

of physical, emotional, and verbal abuse as a child and had a history of a closed head injury, in addition to numerous orthopedic procedures after being hit by a car at the age of 18 or 19.  (Tr. 420-1).  He described anxiety, stress, and panic and had been on Zoloft for two to three years.  He admitted to a history of treatment for alcohol and marijuana use in the 1990s, but denied current use of drugs and stated he had not used alcohol for four months.  (Tr. 421).  Dr. Lynch noted that Mr. Wilson's clothing was dirty and inappropriate, his motor activity was agitated, and he was inattentive and preoccupied, with a tense and angry facial expression.  (Tr. 422).  He was "cooperative but irritable."  His thought content was notable for paranoia and suspiciousness; he appeared to have poor judgment and insight and his coping ability appeared to be overwhelmed.  (Id.).  He responded correctly to eight items on the Rey 15-Item Test.  Dr. Lynch stated that malingering could not be ruled out, but the poor performance could be associated with his apparent attention and concentration problems.  (Tr. 423).  The psychologist diagnosed an intermittent explosive disorder, a mood disorder with psychotic features, and a personality disorder, with a current GAF of 60.  (Id.).  He opined that Mr. Wilson would have a "marked" limitation in his ability to respond appropriately to supervision, coworkers, and work pressures in a work setting. (Id.).  In other areas, he would be restricted no more than moderately.

08-216  Michael Lynn Wilson

Subsequently, the plaintiff was seen by Psychiatrist Syed Umar at the Mountain View Behavioral and Neuroscience Center beginning March 1, 2006.  Mr. Wilson stated that he stayed depressed, had low self-esteem and bad mood swings, heard noises, worried, thought everyone was watching him, and avoided people.  (Tr. 428).  Dr. Umar reviewed some mental health records from Kansas.  Dr. Umar's mental status examination showed that the plaintiff was highly anxious with a poor attention span, limited insight, and limited judgment.  (Tr. 430).  He diagnosed a major depressive disorder with psychotic features, a generalized anxiety disorder, and a remote history of marijuana and alcohol dependence.  (Id.).  He assigned a current GAF score of 40, reflecting "some impairment in reality testing or communication . . . or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood."  DSM-IV-TR, p. 34.  Over the next several visits, Dr. Umar attempted to prescribe different medications, some of which the plaintiff's insurance would not pay for or that he could not tolerate, and his GAF was given as 40 to 50.  (Tr. 426-7).

A state agency psychologist, Dr. Laura Cutler, reviewed the evidence as of February 1, 2006, and found that the plaintiff was no more than moderately limited in any area.  (Tr. 467-8).  She justified lesser restrictions than provided by the consultative examiner, Dr. Lynch, by stating that the mental evidence of record was inconsistent with outpatient treatment ending in November, 2004 and inconsistent

11

08-216  Michael Lynn Wilson

with a vocational educational representative noting in 2003 that retraining was possible. (Tr. 326). Dr. Cutler also noted that Dr. Lynch had noted that malingering could not be ruled out, but concluded that apart from his findings of marked limitations in social functioning, his opinion would be given great weight. (Tr. 469). Another state agency psychologist, Dr. Jay Athy, affirmed Dr. Cutler's opinion on June 23, 2006, subsequent to the submission of the above-described records from Dr. Umar, which he felt were consistent with the previous evidence of record. (Tr. 489-91). He did not address the substantially lower GAF scores indicated by Dr. Umar as opposed to the mental health center in Kansas.

      The plaintiff submitted additional records from Dr. Umar prior to the February 7, 2007 administrative hearing, reflecting GAF scores of 50 to 55 which would range from the "serious" to "moderate" level according to the DSM-IV-TR. (Tr. 517-20). At the most recent visit on January 18, 2007, Mr. Wilson stated that he was overwhelmed, his anxiety was worse, he was experiencing anger and isolating himself in the house, was avoiding the public and could not go to the grocery store. (Tr. 517). Dr. Umar recommended that he learn relaxation techniques and get individual counseling at a local mental health center, in addition to continuing medications. (Id.). No GAF score was given. Counsel for the plaintiff requested and received permission from the ALJ to subsequently submit an assessment from Dr. Umar. (Tr. 582-3). The report, dated February 17, 2007, states that the plaintiff

08-216 Michael Lynn Wilson

had "extreme" limitations in his ability to deal with the public, to perform routine tasks at a consistent and appropriate pace without special supervision, to understand, remember, and carry out complex job instructions, to behave in an emotionally stable manner, and to complete a normal workday and work week without interruptions from psychologically-based symptoms. (Tr. 527-8). Many other areas, such as the ability to follow work rules, interact appropriately with supervisors and coworkers, to accept instructions and to respond appropriately to criticism from supervisors, to use judgment, to maintain attention and concentration, to demonstrate reliability, and to tolerate the ordinary stresses associated with daily work activity, were said to have "marked" limitations. Dr. Umar commented that the plaintiff was socially isolated and would lose people including doctors by altercations with them, watched people and was suspicious of them harming him, was afraid utility workers were trying to get into his home, and was withdrawn and pacing at his house. (Tr. 529). An office note from the same date was also submitted reflecting these complaints and showing that Dr. Umar had increased one medication, discontinued another, and added a third. (Tr. 531).[1]

---

[1] For reasons beyond the scope of this appeal, the ALJ refused to let counsel for the plaintiff question the VE regarding Dr. Umar's restrictions at the second administrative hearing. (Tr. 586-92). It can be safely assumed that there would be no jobs that such a person could perform, however.

08-216  Michael Lynn Wilson

As previously noted, the ALJ found that the plaintiff would be limited to low stress, simple tasks in positions that did not require any useful ability to deal with the public, more than a "seriously limited but not precluded" ability to interact with supervisors and coworkers, or more than a "limited but satisfactory" ability to deal with work stresses.  (Tr. 23).  These restrictions are fairly inconsistent with Dr. Umar's limitations, and appear to be inconsistent at least with Dr. Lynch's opinion that the plaintiff would have a "marked" limitation in his ability to respond appropriately to work pressures in a work setting.  The ALJ apparently discounted Dr. Lynch's opinion to a certain extent because the Rey 15-Item Test showed the possibility of malingering.  (Tr. 21).  He felt that Dr. Umar's restrictions were not supported by the record as a whole.  (Tr. 24).

Generally, the opinion of a treating physician is entitled to controlling weight if it is supported by medically acceptable findings and is not inconsistent with other evidence in the record.  20 C.F.R. §§ 404.1527(d); 416.927(d) (2008).  There is a rebuttable presumption in all cases that the opinion of a treating physician is entitled to great deference, even if it is not controlling. Rogers v. Commissioner of Social Security, 486 F.3d 234, 240 (6th Cir. 2007).  As the only acceptable medical source who treated the plaintiff to offer an opinion, Dr. Umar's restrictions would normally be entitled to such controlling weight.  His restrictions are more severe than the consultative evaluator, Dr. Lynch, the state agency reviewers, and possibly also the

08-216 Michael Lynn Wilson

social worker who treated the plaintiff in Kansas and who indicated a GAF of 60. However, even if the treating physician's opinion is rejected, Dr. Lynch also found a greater limitation which, as noted earlier, was not properly discounted by the state agency reviewer, Dr. Athy. Essentially, the only sources which are not inconsistent with the ALJ's functional capacity finding did not have the benefit of a review of all the evidence, or clearly explain the rationale for their difference of opinion. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). Nor is the evidence of the plaintiff's daily activity and social functioning so clear as to allow the professional opinions to be completely discounted by a lay reviewer. In the evidentiary posture of this case, the opinion of a medical adviser with the ability to review all of the evidence should have been obtained if the professional opinions were to be rejected.

The decision will be remanded for further consideration.

This the 27th day of May, 2009.

Signed By:
G. Wix Unthank
United States Senior Judge